FILED

JUN -1 2014

Clerk, U.S. District and
Bank uptcy Courts

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION      )
OF THE UNITED STATES OF AMERICA       )      MISC. NO.   *14-599*
FOR AN ORDER PURSUANT TO              )
18 U.S.C. SECTION 2703(D)             )      UNDER SEAL

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. SECTION 2703(d)

The United States of America, by and through its counsel, Ronald C. Machen Jr., United

States Attorney for the District of Columbia, and David B. Kent, Assistant United States

Attorney, respectfully submits under seal this *ex parte* application for an Order pursuant to 18

U.S.C. § 2703(d). The proposed Order would require Sprint, a cellular service provider, located

in Overland Park, Kansas, to disclose certain records and other information pertaining to cellular

telephone number 202-520-8905, as described in Part I of Attachment A. The records and other

information to be disclosed are described in Part II of Attachment A to the proposed Order. In

support of this application, the United States asserts:

### LEGAL BACKGROUND

1.      Sprint is a provider of an electronic communications service, as defined in 18

U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require Sprint to

disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of

Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      This Court has jurisdiction to issue the proposed Order because it is "a court of

competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offenses being

investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3.     A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

THE RELEVANT FACTS

4.     The Applicant certifies that the United States Attorney's Office for the District of Columbia, the Washington Field Office of the Federal Bureau of Investigation (FBI), and the Washington, D.C. Metropolitan Police Department (MPD) are conducting a criminal investigation into violations of 18 U.S.C. § 2113, Bank Robbery, involving the May 15, 2015, 10:30 a.m., bank robbery of the Columbo Bank, located at located at 1301 9th Street N.W., Washington, D.C. 20001; and violations of 18 U.S.C. § 1951(a), Conspiracy to Interfere with Interstate Commerce by Robbery, involving the May 14, 2014 armed robbery of an Exxon gas station in Montgomery County, Maryland.  One of the subjects of the investigation, ALEX ALEXANDER, used a wireless telephone identified by cellular telephone number 202-520-8905.

5.     On May 15, 2014, at approximately 10:30 a.m., three black males (hereinafter Subject 1, Subject 2, and Subject 3) entered the Colombo Bank located at 1301 9th Street N.W., Washington, D.C. 20001.  Colombo Bank is insured by the Federal Deposit Insurance Corporation (FDIC).  Subject 1 was carrying a black backpack and wearing an aqua blue baseball cap with the letters "DC" and a dark colored jacket and shirt.  Subject 2 was wearing a black jacket with a white stripe and a hood.  Subject 3 was wearing dark colored jacket and stood

2

near the entrance, believed to be acting as a "look out". Subject 1 and Subject 2 approached the teller counter. The Victim Teller recognized the Subjects upon entering the bank, as being the same individuals who entered the bank earlier in the week acting in a suspicious manner. The Victim Teller also recognized the subjects were about to rob the bank based on their suspicious behavior earlier in the week and their heavy winter clothing. The Victim Teller immediately began activating the bank's silent alarm to notify law enforcement.

6.      Subject 1 passed a demand note to the Victim Teller and placed the black backpack on the counter. Subject 2 reached into his waistband as if he was reaching for a weapon. The Victim Teller read the demand note and it stated, "Empty Drawer Fast or Everybody Dies!!!" The Victim Teller began placing United States currency from his cash drawer into the backpack, along with a dye pack. At this time, Subject 3 began shouting "Let's go! Let's go! They got us!" Immediately thereafter, Subject 1 turned away from the teller counter and began heading towards the entrance door. Subject 2 grabbed the black backpack and fled the bank with Subjects 1 and 3.

7.      Upon exiting the bank, the Subjects fled on foot heading north on 9th Street to the parking lot of a BP Gas station located at 1317 9th Street, N.W., Washington, D.C. 20001. At some point, the dye pack exploded and red smoke discharged from the black backpack. The black backpack was dropped at the BP Gas station next to gas pump number 8. All three Subjects entered a red compact vehicle, which was parked at the BP Gas station next to pump number 8, and fled the area.

8.      Upon arrival of law enforcement, the black backpack was recovered from the BP Gas station. Recovered from inside the backpack was $780 in United States currency which was red dye stained. Representatives from Colombo Bank conducted a cash count of the Victim

3

Teller's drawer and determined $800 in United States currency was stolen during the robbery.

9.       A review of surveillance video from a nearby business further revealed approximately ten minutes prior to the robbery, Subjects 1, 2 and 3, were captured walking on 9th Street in the vicinity of Colombo Bank and the BP Gas station. The surveillance video also captured the Subjects entering a red compact Chevrolet vehicle which was parked on 9th Street in front of the BP Gas station.

10.      Interviews of the Victim Teller and a Colombo Bank employee (hereinafter Employee 1) also revealed that three black males matching the ages and physical descriptions of Subjects 1, 2 and 3 had entered the Colombo Bank branch earlier that week on May 12, 2014. Employee 1 described the actions of the Subjects as being suspicious and believed two of the Subjects looked in appearance like brothers.

11.      Surveillance photographs of all three Subjects from inside the Colombo Bank on May 12, 2014 were released to the media. The local television news stations displayed the surveillance photographs of the Subjects on the evening news on May 15, 2014. Subsequently, information was developed that a witness (hereafter Witness 1) knew all three Subjects from the Colombo Bank robbery.

12.      On May 17, 2014, Witness 1 was interviewed by Detectives with the Washington, D.C. Metropolitan Police Department. Detectives displayed the surveillance photographs from May 12, 2014 to Witness 1. Upon reviewing the photographs, Witness 1 identified the individuals in the photographs as ALEX ALEXANDER, ALVIN ALEXANDER, and ALLANTE ALEXANDER. Witness 1 advised that all three individuals are brothers and he has known them since they were born.

13.      On May 19, 2014, the Victim Teller reviewed surveillance photographs from

4

inside Colombo Bank taken on May 12, 2014. The Victim Teller identified the three individuals in the surveillance photographs as the same three Subjects that entered the bank earlier in the week of the robbery and were acting suspicious.  The Victim Teller also identified the individuals as the same Subjects who robbed the bank on May 15, 2014.

14.     A review of public source databases determined ALLESHA ALEXANDER is a family member of ALEX ALEXANDER, ALVIN ALEXANDER, and ALLANTE ALEXANDER.

15.     A check of District of Columbia's Department of Motor Vehicles revealed that the red compact Chevrolet vehicle is registered to ALLESHA ALEXANDER.

16.     A check of a public source databases determined the red compact Chevrolet vehicle was purchased at Oursman Chevrolet in Bowie, Maryland.  A representative of Oursman Chevrolet was contacted on May 19, 2014 and confirmed the red compact Chevrolet vehicle was sold from their dealership and is red in color.

17.     On May 17, 2014, Witness 2 was interviewed by Detectives with the Washington, D.C. Metropolitan Police Department.  Witness 2 informed law enforcement that ALLANTE ALEXANDER admitted his role in a bank robbery, and that ALLANTE ALEXANDER and his brothers were aware that the FBI was looking for them and were going to run to avoid apprehension.  Law enforcement also learned that at least two of the ALEXANDERs were planning on committing an additional bank robbery.

18.     On May 20, 2014, this Court issued warrants for the arrests of ALEX ALEXANDER, ALVIN ALEXANDER, and ALLANTE ALEXANDER for Bank Robbery, in violation of Title 18, U.S. Code Section 2113(a).

19.     On or about May 21, 2014, a court in Montgomery County, Maryland, issued

warrants for the arrests of ALEX ALEXANDER, ALVIN ALEXANDER, ALLANTE ALEXANDER, and ALLESHA ALEXANDER for a May 14, 2014, armed robbery of an Exxon gas station.

20.    On May 22, 2014, at approximately 12:55 p.m., in 4600 block of Texas Avenue, S.E., Washington, D.C., Metropolitan Police Officers initiated a vehicle stop on the red compact Chevrolet vehicle.   Officers stopped the vehicle based on a belief that fugitives ALVIN ALEXANDER, ALEX ALEXANDER and ALLANTE ALEXANDER may be in the vehicle. Officers identified the driver of the vehicle as ALLANTE ALEXANDER and placed him under arrest pursuant to a check of the National Crime Information Center (NCIC) which revealed an active arrest warrant for ALLANTE ALEXANDER issued in United States District Court for the District of Columbia.   Officers identified the passenger inside the vehicle as ALLESHA ALEXANDER who is the registered owner of the vehicle.   A check of ALLESHA ALEXANDER through NCIC revealed an active arrest warrant for her issued by the Montgomery County Police Department from Montgomery County, Maryland.   ALLESHA ALEXANDER was also placed under arrest.

21.    Following her arrest, ALLESHA ALEXANDER waived her <u>Miranda</u> rights and admitted that she and her three brothers ALEX ALEXANDER, ALVIN ALEXANDER, and ALLANTE ALEXANDER traveled to the area of the bank in the red compact Chevrolet vehicle. ALLESHA ALEXANDER further admitted that after the red compact Chevrolet vehicle was parked at a BP gas station, her three brothers exited and returned to the vehicle a short time later. ALLESHA ALEXANDER stated that after the dye pack exploded, she knew her brothers had robbed a bank.   ALLESHA ALEXANDER and her brothers then fled the scene in the red compact Chevrolet vehicle.

22.     Both ALLESHA ALEXANDER and ALLANTE ALEXANDER provided home addresses in the District of Columbia.

23.     On May 23, 2014, law enforcement arrested ALEX ALEXANDER and ALVIN ALEXANDER on this Court's warrant and the Montgomery County, Maryland warrant. During a search incident to arrest, law enforcement seized, from ALEX ALEXANDER, a cellular telephone, phone number 202-520-8905, which belonged to and was subscribed to the leaseholder of the residence where the arrest took place.  The owner and subscriber of the cell phone indicated that ALEX ALEXANDER had been given permission to use the phone, and then gave law enforcement consent to search it.  A search of the phone revealed a series of incoming texts from the phone number which ALVIN ALEXANDER SR. had provided to law enforcement as his cell phone number.  A review of the text messages showed a text from ALVIN ALEXANDER SR. to ALEX ALEXANDER "u didnt loose ur money."  Another text message from ALVIN ALEXANDER SR. asked ALEX ALEXANDER if he had money to eat.

24.     Following his arrest, ALEX ALEXANDER waived his Miranda rights and admitted his involvement in the bank robbery.  ALEX ALEXANDER further admitted that he, ALVIN ALEXANDER, ALLANTE ALEXANDER, and ALLESHA ALEXANDER traveled to the area of the bank in the red compact Chevrolet vehicle and fled the scene in the red compact Chevrolet vehicle.   ALEX ALEXANDER also admitted that he, ALVIN ALEXANDER, ALLANTE ALEXANDER, and ALLESHA ALEXANDER were present at the time of the Exxon robbery, and that the four of them traveled to the Exxon in Montgomery County, Maryland in the red compact Chevrolet vehicle.

25.     Both ALEX ALEXANDER and ALVIN ALEXANDER provided home addresses in the District of Columbia.

7

26.     On May 29, 2014, a grand jury sitting in the District of Columbia returned a two-count indictment charging ALEX ALEXANDER, ALVIN ALEXANDER, and ALLANTE ALEXANDER with one count of Bank Robbery, in violation of 18 U.S.C. § 2113(a), and charging ALLESHA ALEXANDER with one count of Accessory After the Fact, in violation of 18 U.S.C. § 3.

27.     The records and other information described in Part II of Attachment A will help corroborate and confirm the identities of the individuals involved in the above-described offenses, as well as establish a pattern of their movements, including from the District of Columbia to Maryland and back during the course of their offenses, from May 9, 2014 through May 23, 2014.

REQUEST FOR AN ORDER

28.     The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help the United States to determine the movements of ALEX ALEXANDER on the days of the planning and commission of the offenses; and his patterns of movements during the time period leading up to the offenses, including any ties to or surveillance of the location or area of the armed robberies and meetings with co-conspirators prior to the robberies.  Further, the historical cell site data will yield evidence of their movements following the robberies, including further evidence as to where ALEX ALEXANDER may have been staying, including possibly by spending the night.  Further, the historical cell site data, in conjunction with call detail information, also may assist law enforcement in identifying any accomplices to the armed robberies or the location of any additional physical evidence.  Accordingly, the United States

requests that Sprint be directed to produce all items described in Part II of Attachment A to the proposed Order.

29.     The United States further requests that the Order require Sprint not to notify any person, including the subscribers or customers of the accounts listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation, the contours of which are not fully public, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to destroy or tamper with evidence, or to alert possible and potential government witnesses. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

30.    The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that not fully known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

RONALD C. MACHEN JR.

United States Attorney
D.C. Bar No. 447889

DAVID B. KENT
Assistant United States Attorney
D.C. Bar No. 482850
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-7763 (phone)
David.Kent@usdoj.gov

## ATTACHMENT A

**I.        The Account**

The Order applies to certain records and information associated with the following telephone number:

202-520-8905

**II.       Records and Other Information to Be Disclosed**

Sprint is required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period May 9, 2014 through May 23, 2014:

A.    The following information about the customers or subscribers of the Account:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.   All records and other information (not including the contents of communications) relating to the Account, including:

    1.   Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

    2.   Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

    3.   All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.